# IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2004 FEB 25  AM 8: 47

| | | |
|---|---|---|
| DIRECTV, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | Civil Action No. 4:03-CV-422-A |
| | § | |
| JAMES GARCIA, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S SUPPLEMENT TO REQUIRED FILING PURSUANT TO THE COURT'S FEBRUARY 19, 2004, ORDER

Pursuant to the Court's February 19, 2004, Order ("Order"), and Plaintiff DIRECTV, Inc. ("DIRECTV") prior response, attached are copies of transcripts from the state court proceedings received after 3:00 pm on Tuesday, February 24, 2004, that are being provided as requested by the Court.

PLAINTIFF'S SUPPLEMENT TO REQUIRED FILING PURSUANT TO
THE COURT'S FEBRUARY 19, 2004, ORDER – Page 1

Respectfully Submitted,

By:_____
      Michael G. Brown
      State Bar No. 03153800

Figari & Davenport, L.L.P.
3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas  75202-3796
(214) 939-2000 (telephone)
(214) 939-2090 (telecopier)

OF COUNSEL:

Frederick Black
State Bar No. 02371100
Andrew J. Mytelka
State Bar No. 14767700

Greer, Herz, & Adams, L.L.P.
One Moody Plaza, 18th Floor
Galveston, Texas 77550
(409) 797-3200 (telephone)
(409) 766-6424 (telecopier)

**PLAINTIFF'S SUPPLEMENT TO REQUIRED FILING PURSUANT TO
THE COURT'S FEBRUARY 19, 2004, ORDER – Page 2**

## CERTIFICATE OF SERVICE

This is to certify that on the 25th of February, 2004, I served the foregoing document on counsel for defendant in the foregoing matter by hand delivery as follows:

Roy A. Davis
Attorney at Law
310 N. Main Street
Suite C (Hwy. 377)
Keller, Texas 76248

_____
Michael G. Brown

REPORTER'S RECORD

TRIAL COURT CAUSE NO. 00-07374-K

IN RE: JOHN CHARLES MARCO        *        IN THE DISTRICT COURT

OF DALLAS COUNTY, TEXAS

160TH JUDICIAL DISTRICT

– – – – – – – – – – – – – –

HEARING

– – – – – – – – – – – – – –

COPY

    BE IT REMEMBERED, that on November 21, 2003, the
following proceedings came on to be heard in the above-entitled
and numbered cause before the HONORABLE JOSEPH M. COX, Judge of
the 160th Judicial District Court of Dallas County, Texas.

    Proceedings reported by machine shorthand.

1    A P P E A R A N C E S:

2       MS. HOLLIE GREENE
     SBOT No. 24006564
3       1414 West Randol Mill Road
     Suite 118
4       Arlington, Texas 76012
     817 226-8100

5

6       MR. JOHN CHARLES MARCOS
     2813 Owen Lane
7       Mesquite, Texas 75150

8                       APPEARING PRO SE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

<u>C H R O N O L O G I C A L    I N D E X</u>

2  HEARING

3  November 21, 2003

4  <u>WITNESS OR PROCEEDING</u>                    <u>PAGE</u>

5       <u>HOLLIE GREENE</u>                          6

6       <u>MICHAEL HINDMAN</u>                       11

7       <u>RONALD MCCLAIN</u>                        13

8       <u>JACK ROSSER</u>                           16

9

<u>A L P H A B E T I C A L    I N D E X</u>

10

11  <u>WITNESS</u>                 <u>DIRECT</u>  <u>CROSS</u>  <u>REDIRECT</u> <u>RECROSS</u>

12       <u>HOLLIE GREENE</u>                          6

13       <u>MICHAEL HINDMAN</u>                       11

14       <u>RONALD MCCLAIN</u>                        13

15       <u>JACK ROSSER</u>                           16

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2         THE COURT:  John Charles Marco, 00—07374—K.

3     Mr. Marco, how are you doing?

4         MR. MARCO:  Pretty good.

5         THE COURT:  Mr. Marco, let me tell you a couple of

6    things before we get going here.

7         You understand that I issued an order to show cause for

8    you today based upon some allegations that have been made about

9    your process serving in the past?

10        MR. MARCO:  Yes, sir.

11        THE COURT:  Is that a yes?

12        MR. MARCO:  Yes.

13        THE COURT:  Let me tell you this before we go forward

14   and before you either testify or listen to anybody or before

15   you wish to say anything.  You have the right to remain silent,

16   okay, you don't have to say anything, if you don't desire to

17   say anything.

18        Some of the allegations against you that you have signed

19   returns of service, filed those, they have been inaccurate.

20   That could lead to some problems for you.

21        MR. MARCO:  Uh—huh.

22        THE COURT:  From a criminal standpoint.  So you need

23   to decide for yourself if you're going to say anything today or

24   not say anything today, all right?

25        MR. MARCO:  Yes, sir.

```
 1              THE COURT:  Do you have an attorney?

 2              MR. MARCO:  No, I don't.

 3              THE COURT:  Do you wish to get an attorney?

 4              MR. MARCO:  Yes, I do.  I didn't know it was that

 5    serious.

 6              THE COURT:  It's serious.  It's very serious.

 7         Here is what we're going to do today then.  I'm going to

 8    listen to everybody that has come here, since there's some

 9    lawyers back here.  We're going to hear what they have to say,

10    all right?

11         And then we'll reconvene, if necessary, where you'll have

12    a chance to have an attorney, okay?

13              MR. MARCO:  Yes, your Honor.

14              THE COURT:  So let's just see what everybody has to

15    say here, then we'll reconvene.

16         My advice to you is take a seat right here right at one of

17    these tables and you can just listen and see what happens,

18    okay?

19              MR. MARCO:  Yes, your Honor.  Thank you.

20              THE COURT:  You bet.

21         All right, who is going to testify with respect to John

22    Charles Marco?

23              MS. GREENE:  I think I'm going first, then everyone

24    else I think is going to testify.  Do you want us to get --

25              THE COURT:  All right, Mr. Rosser, and anybody that
```

1  wants to come up and testify, please step forward up here and

2  we'll do them one at a time.  If I could get all of you to

3  raise your right hand.

4                (Whereupon four witnesses were sworn)

5            THE COURT:  Ms. Greene, do you want to go first?

6                        HOLLIE GREEN,

7  having been sworn, testified as follows:

8            MS. GREENE:  On October 22nd, 2003, I notified

9  Saundra Brimm, who is an adjustor with Allstate Insurance,

10  that, in two separate cases, her insured was served and that

11  her answer was past due.  I faxed her the return citations in

12  both of the cases as proof.  Later that day she called me,

13  stating that she had spoke with both of her insureds and they

14  each adamantly denied ever being served.

15      The very same day I notified Steve Frazier, who is an

16  adjustor with Farmers Insurance that his Defendant insured was

17  served and the answer was past due.  I faxed him the return

18  citation also.

19      Later on that day he called me and told me that his

20  insured adamantly denied being served.

21      At that time I pulled the return, the file stamped return

22  citation copies that I had in my office, and I noticed that the

23  same process server, John Charles Marco, Junior, was the same

24  one on all three citations as the one that served the

25  Defendant.

1    I called Jack Rosser, who was my process server that I

2    used, and told him about this situation.  I faxed him the

3    return citations in question.  And the next day, it was my

4    understanding, that Mr. Marco was terminated.

5         THE COURT:  Okay.

6         MS. GREENE:  On October 24th, 2003, I got all of the

7    citations reissued, and they were all re-served within 72

8    hours.  And in talking with Jack on October 24th, 2003, he

9    informed me that there were two other attorneys that had

10   reported similar incidents to him the day before.

11   It was three at the time I wrote you the letter.  It's now

12   four confirmed cases that I have concrete proof on.  The

13   Defendants were all served initially back in September of 2003.

14   However, the first one involves Wilson A. Gonzales and Maria

15   Leal versus Aaron Sanders in the 298th.  Allegedly the

16   defendant was served on August 27, 2003 by a Rule 106.

17   And that did not occur because I got the citation

18   reissued, and I served it again in the same fashion, and I got

19   a call from an attorney with Ben Abbott's office, who said he

20   got the citation on his door and didn't know anybody by that

21   name.  He had lived there for a few months and he hadn't

22   received anything prior to that.

23   The other one involves a case by the name of Marlene

24   Canari versus Kim Hoffman Phillips in the 95th Court.  The

25   defendant was allegedly served on September 18th, 2003, in

1    Waxahachie.   I notified her adjustor when I noticed that her

2    answer was also overdue.   She stated her Defendant was not

3    insured, or her Defendant was not served, and so I arranged for

4    citation to be reissued.   And that person was re-served

5    correctly.

6         Also in one of your cases, Francisco Arius and Nancy Arius

7    versus Amy Herrington.   This was one of the instances with

8    Saundra.   She allegedly was served on August the 5th, 2003, in

9    The Colony.   She was not served.   She adamantly denied being

10   served.   I got the citation reissued and she was re-served and

11   an answer has been filed in her case.

12        Another case involves Jose Guerrero and John Guerrero

13   versus Trae Atchison in the 162nd.   This was the other one from

14   Saundra Brimm where the defendant was allegedly served on the

15   18th of November, between the 18th of October.

16        And this is the first one that actually tipped me off

17   because when I got -- when I called the adjustor and she told

18   me she hadn't been served, I called Jack and I asked Jack for

19   more specific information.   What did the person look like, a

20   physical description, perhaps she misidentified herself.   It

21   has happened before.   Jack gave me the physical description of

22   the person.   I called Saundra back and I told her that's what

23   the person looked like, and she adamantly denied being served.

24   Jack verified that with her and she was later re-served

25   correctly and filed an answer appropriately.

1          THE COURT:  Did she look like the person who actually

2    was served, or you say was actually served?

3          MS. GREENE:  You know, I don't know, I'm not really

4    sure, but she lives --

5          THE COURT:  Well, we'll find out.

6          MS. GREENE:  She's a truth worthy person, lives in

7    Highland Park, has got a lot of money, I don't think she would

8    lie about something like this.

9          The fifth confirmed case that I had in Dallas County was

10   Teresa Rodriguez versus Charles Oney in the 101st.  He was

11   allegedly served on August 5, 2003, in Allen.  This is the case

12   that involves Steve Frazier from Farmers.  When I notified

13   Steve again, the person adamantly denied being served.   I got

14   the citation reissued, served correctly, and he filed an

15   answer.

16        Since I'm the one that's in charge of service at my firm,

17   that's how I discovered it by following up on things.  And I

18   also have three suspected ones in Tarrant County that I haven't

19   been able -- I'm still waiting on appropriate confirmation, but

20   it wouldn't surprise me at this time.

21          THE COURT:  Do you have copies of anything with the

22   returns of service you say are invalid?

23          MS. GREENE:  Yes, I do.  They're not like certified.

24          THE COURT:  That's fine.  I would just like to see

25   them.  Thank you.

1           MS. GREENE:  You're welcome.

2           THE COURT:  Anything else?

3           MS. GREENE:  I don't think so.  Just that All State

4    has been extremely cooperative in the cases with Trae Atchison

5    and Amy Herrington.  She stated their defendants are willing to

6    sign an affidavit that they were not served at that time and

7    place, and that they were willing to cooperate with me in

8    anything else I may need them for in the future, which I really

9    appreciate that.

10       And also I believe Kim Hoffman Phillips is also going to,

11   I suspect, also.

12       It further confirmed to me that they were not served the

13   first time because when they got served the second time, they

14   immediately turned it over to their insurance company.  Perhaps

15   they had -- obviously they had been tipped off because they had

16   called them, but that shows me they didn't get served and then

17   just throw it away in the trash or forget about it.  They knew

18   it was coming.  They're we will educated people.

19           THE COURT:  Okay.  All right, anything else?

20           MS. GREENE:  I also believe it's a conflict for John

21   Marco's wife Cindy to have her papers still intact, because if

22   John's papers are pulled today, but she still has permitted

23   access to the return citations or subpoenas for the Court, I

24   believe that puts other defendants and attorneys at risk of

25   perhaps fraudulent citations being filed.

1          THE COURT:   Okay.   Thank you very much.

2      All right, who is next?

3      Mr. Hindman, are you going to testify?

4          MR. HINDMAN:   I am, your Honor.

5          THE COURT:   Come on up.

6              MICHAEL HINDMAN,

7  having been sworn, testified as follows:

8          MR. HINDMAN:   Michael Green versus Andrea Adams,

9  which I think is Cause Number 03-07204, in the 160th District

10  Court, the Court that we're before here today, obviously, I

11  served the defendant, or I asked Jack Rosser the process server

12  to serve the defendant in this case.   Mr. Rosser evidently had

13  assigned the service to Mr. Marco.

14      The citation was filed and a copy was given to me.   It was

15  on file with the Court.   And it is on file with the Court.   We

16  were then put on the dismissal docket after no answer was

17  filed.   I called my client Michael Green, because I knew in

18  this particular case he was a passenger in the automobile of

19  Ms. Adams, the defendant, and they were friends.   And I asked

20  him to tell her to turn her papers over to her insurance

21  company.   And he did.   And she reported back that she had never

22  received any papers at all.

23      I explained to Mr. Green that it was very important that

24  he did so, because if she didn't do so, that her insurance

25  company could argue that she wasn't cooperating in the defense,

1   and therefore deny any coverage whatsoever, and he would end up

2   with a judgment.

3        So he proceeded to get together with her again to discuss

4   the matter.  He called me back while they were visiting and

5   said, she is positive she was never served any papers

6   whatsoever.  The matter by that time had already been set for

7   default.  I think it was on November 4th of this year.  And

8   just a day or two prior to that I had learned about this

9   problem from talking to Ms. Greene and Mr. Rosser, that he

10  believed -- when we found out that Mr. Marco had allegedly

11  served those papers and filed the citation that this was

12  starting a -- a pattern was forming with Mr. Marco.

13       So I looked through some previous citations which I had

14  already taken default and I found two, one case I can remember

15  the name of is Vivian Washington, which is in the 14th.  And I

16  looked at that one again, it was Mr. Marco.  And there was

17  another case where that was also the case.  And I'll say from

18  experience I probably filed over 100 lawsuits a year, and to

19  have three or four defaults occur within a span of a month, as

20  I did in this case, or default situations occur within a span

21  of a month has never happened ever.

22       And this case, all of the situations where that happened,

23  the alleged process server was Mr. Marco.  Mr. Marco had signed

24  the citations in all of those cases.

25       So in my opinion, from my experience, to have that happen

1    with that regularity, and then to learn from other attorneys, I

2    know Ms. Greene also files a lot of lawsuits, and to have this

3    happen six, seven, eight, nine times in a span of a month or

4    two, as it has here, indicates to me, that alone, in addition

5    to my experience in talking with my client Ms. Adams, that

6    these defendants were not served.

7        That is my opinion.  Thank you.

8            THE COURT:  All right, who is next?

9                    RONALD MCCLAIN,

10   having been sworn, testified as follows:

11           MR. MCCLAIN:  Your Honor, my name is Ron McClain, I

12   work for the law firm of Ferrer Poirot Wansbrough here in

13   Dallas.

14           THE COURT:  Okay.

15           MR. MCCLAIN:  Unfortunately, my memory is not as

16   sharp as the young lady that had everything documented because

17   she was, you know, right on top of all of this service.  It

18   came to light in our situation when we got one invoice with six

19   cases served from Alliance Process group.  Sometime following

20   that, we received a call from a defendant -- actually, let me

21   back up a minute.

22       As soon as we get the returns in it's standard practice in

23   our office to forward those to the handling insurance adjustor

24   so they can do what they need to do to get answers filed or

25   whatever.

1    In the 18 some years I've been doing this, I've taken

2    several defaults in insurance situations, and never had one

3    stick.  So rather than waste my time, I try to get it done in

4    the initial outset and get cases served.

5    So all of those were given, and actually the -- one of the

6    defendants, a Mr. Richard Fraeling in one of the cases filed,

7    all of these were filed in County Courts at Law vehemently

8    denying that he had ever been served any type of papers.

9    And he was questioned regarding, well, do you really know

10   what all of this is?  And just so happens, he is also a

11   licensed attorney here in Dallas, and he was very familiar with

12   that situation.  So we started looking at the citations.  I've

13   got a copy for the Court to review.  In each of these six

14   cases, I only have one confirmed case, that's Mr. Fraeling's

15   case, Perez versus Fraeling in County Court Number 3, I

16   believe, Cause Number 03-08974.

17   The others are suspect because all of them were the same

18   situation that Mr. Hindman described, where generally you file

19   your lawsuit and before too awful long the answer comes.  In

20   all of these the adjustor was not aware of any type of service,

21   and had not heard from their defendants.  However, in all of my

22   cases, answers had been filed.

23   I do note that if you pay careful attention to those

24   citations, they're in time served order the way I handed them

25   to the Court, and the very last two, Prado versus Hardy, where

1   Mr. Prado was served in Seagoville at 11:35 a.m. on August the

2   2nd.  And the very last one, Jennifer Johns, the defendant was

3   served at 11:39 a.m. in Irving, Texas.  That would take a

4   pretty amazing feat to get that accomplished.

5       There is other discrepancies that you might find in those.

6   They were all picked up the same day at the same time, all

7   served the same day in that morning of August the 2nd between

8   8:50 a.m. and 11:39 a.m.

9       The one for Mr. Fraeling and one on the cases of Deleon

10  versus Bretado are in the same zip code; however, they are

11  served at different -- there's two other services in different

12  parts of the City.  And it comes back to that one.  So it just

13  doesn't follow any particular pattern on someone that's

14  experienced in serving and driving all over the City.

15      And that's pretty much -- I would imagine that

16  Mr. Fraeling would be more than happy to offer testimony in

17  this case.  His attorney has filed an answer denying service.

18  Obviously the fact that answers have been filed negates the

19  need for re-service.  But all of them either have been or will

20  be notified of the discrepancies in due course.

21          THE COURT:  Okay, thank you, sir.

22      Mr. Rosser.

23          MR. ROSSER:  Good morning, your Honor.

24          THE COURT:  What is it you wish to tell the Court?

25                  JACK ROSSER,

1    having been sworn, testified as follows:

2         MR. ROSSER:  My name is Jack Rosser, I'm the sole

3    proprietor of Alliance Process Group.  I started my business 14

4    years ago.  I have various subcontractors that I issue papers

5    to for service.  One happens to be Mr. John Charles Marco, Jr.

6    I was notified by Ms. Hollie Greene of The Guerrero Law Firm,

7    I believe it was in August of this year, of some discrepancies

8    with his documents that he returned to the Court.

9         I asked Mr. Marco to come to my office and we spoke about

10   it.  He vehemently denied that he made service -- he had made

11   service, and denied he didn't.

12        At that time I no longer use him as a private process

13   server.

14        Since then, there's several other occasions that

15   you've already heard from, Mr. Hindman and Ron McClain.  And

16   that's all I have to offer at this time.  However, I will say

17   that all of the papers that Mr. Marco said he had served, I've

18   seen that they've been re-served properly.

19        THE COURT:  At any time did Mr. Marco admit to you

20   that he did not serve some of these people?

21        MR. ROSSER:  No, he never did.

22        THE COURT:  He never denied serving them?

23        MR. ROSSER:  That's correct.

24        THE COURT:  Very good, sir.  Anything else?

25        MR. ROSSER:  No.

1          THE COURT:  Anyone else who wishes to testify

2    regarding any of this?

3        I don't know what you two -- are y'all here for

4    something?

5          SPECTATOR:  We're here with them, your Honor.

6          THE COURT:  Anybody else wish to say anything?

7        Mr. Marco, the allegations against you are serious.  And

8    as I said, you're entitled to an attorney, because I believe

9    you should understand your rights and whether or not you should

10   say anything at all to me.

11       Because I have some questions for you.  Okay.  Let me ask

12   you at this time, are you willing to answer my questions, or do

13   you wish to wait for an attorney to be present?

14          MR. MARCO:  I will wait for an attorney.

15          THE COURT:  Okay, very good.

16       What I'm going to do, I'm going to suspend your right to

17   serve process at this time.  I'll have a hearing sometime in

18   December.  And I'm going to give you some time to get a lawyer.

19   Okay?

20          MR. MARCO:  Okay.

21          THE COURT:  I'll probably have a hearing in another

22   30 days from now.  My court administrator will send you a

23   notice of it, okay?

24          MR. MARCO:  Yes, sir.

25          THE COURT:  2813 Owen Lane in Mesquite, is that your

1    address?

2             MR. MARCO:  Yes, your Honor.

3             THE COURT:  Okay, very good.  We'll send you out a

4    notice to reappear back with your lawyer in December.

5             MR. MARCO:  Yes, your Honor.

6             THE COURT:  Some or all of these lawyers may wish to

7    return.  Maybe they won't.  But the next hearing is going to be

8    between you and me, and we're going to discuss the allegations

9    that have been raised against you.

10            MR. MARCO:  Yes, your Honor.

11            THE COURT:  And at that time you'll need some counsel

12   to advise you on whether or not to answer my questions.

13            MR. MARCO:  Yes, your Honor.

14            THE COURT:  Okay, very good.  We're adjourned.

15            MS. GREENE:  May I say something else before you go

16   off the record, please?

17      Will Donna be sending me notice of that hearing also?

18            THE COURT:  Yes, we'll let everybody know.

19            MS. GREENE:  I'll take care of distributing it to

20   everyone that was here, since I gave it to them the first time.

21            THE COURT:  Okay.

22            MS. GREENE:  Also at the reconvenement in 30 days,

23   can we also address the issue of Cindy Marco's papers?

24            THE COURT:  We'll consider it, if you would like.  At

25   this time we're not going to do anything about it.

1      Okay?

2              MS. GREENE:  Thank you, sir.

3              THE COURT:  Very good.  Thank you very much.

4      Everybody is released.  We'll see you in probably 30 days

5  or so.  Is there any time anybody is going to be out of town

6  the third or the fourth week in December, the week before

7  Christmas?

8              MS. GREENE:  I will be here.

9              MR. MARCO:  I'll be here.

10             THE COURT:  All right.  Thank you.

11                          END OF PROCEEDINGS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   THE STATE OF TEXAS

2   COUNTY OF DALLAS

3

4       I, SHARRON RODRIGUEZ RANKIN, Official Court Reporter in and

5   for the 160th Judicial District Court of Dallas County, State

6   of Texas, do hereby certify that the above and foregoing

7   contains a true and correct transcription of all portions of

8   evidence and other proceedings directed in writing by counsel

9   for the parties to be included in this Volume of the Reporter's

10  Record in the above styled and numbered cause, all of which

11  occurred in open court or in chambers and were reported by me.

12      I further certify that this transcription of the

13  proceedings truly and correctly reflects the exhibits, if any,

14  offered by the respective parties.

15       I further certify that the total cost for the preparation

16  of this Reporter's Record is $100 and was paid.

17      WITNESS my hand this the 24th day of February, 2004.

18

19                              SHARRON RODRIGUEZ RANKIN

20                              Official Court Reporter
                                Certificate Number 1082

21                              Expiration Date:  12-31-04
                                160th District Court

22                              4th Floor Allen Courts Bldg.
                                (214) 653-6938

23

24

25

REPORTER'S RECORD

TRIAL COURT CAUSE NO. 00-07374-K

IN RE: JOHN CHARLES MARCO       *        IN THE DISTRICT COURT

                                         OF DALLAS COUNTY, TEXAS

                                         160TH JUDICIAL DISTRICT


– – – – – – – – – – – – – –

HEARING

– – – – – – – – – – – – – –



BE IT REMEMBERED, that on December 19, 2003, the

following proceedings came on to be heard in the above-entitled

and numbered cause before the HONORABLE JOSEPH M. COX, Judge of

the 160th Judicial District Court of Dallas County, Texas.


Proceedings reported by machine shorthand.

1  A P P E A R A N C E S:

2      MS. HOLLIE GREENE
       SBOT No. 24006564
3      1414 West Randol Mill Road
       Suite 118
4      Arlington, Texas 76012
       817 226-8100

5

6      MR. JOHN CHARLES MARCOS
       2813 Owen Lane
7      Mesquite, Texas 75150

8                                    APPEARING PRO SE

9      MR. ARCH MCCALL
       Attorney at Law
10                                   APPEARING FOR MR. MARCO

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

# C H R O N O L O G I C A L   I N D E X

2

HEARING

3

December 19, 2003

4

<u>WITNESS OR PROCEEDING</u>                                          <u>PAGE</u>

5

<u>ANDREA STOLLER</u>

6

DIRECT TESTIMONY                                              13
CROSS-EXAMINATION BY MR. MCCALL                               15

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          P R O C E E D I N G S

2          THE COURT:  Do you have a lawyer?

3          THE WITNESS:  Yes.

4          THE COURT:  Who is your lawyer?

5          MR. MCCALL:  Arch McCall.

6          THE COURT:  Good morning.

7      Can you tell me your name again?

8          MR. MCCALL:  My name is Arch McCall, your Honor, and

9  I have been approached, but not yet retained by Mr. John

10  Charles Marco.  And he has explained to me that there is a

11  situation where there is this hearing to show cause, and all he

12  gave me was this piece of paper.

13      He's not been served with any specific allegations, so I

14  said, well, you know, once we get fully retained, then I need

15  to get a copy of the entire file.  I imagine there will be

16  something in there that explains everything.

17          THE COURT:  There is not.  He is well aware of what

18  he has been alleged to have done.

19          MR. MCCALL:  I assume that he's presumed innocent.

20  He was given Miranda warnings.

21          THE COURT:  Right.

22          MR. MCCALL:  Unless and until there is something in

23  writing that specifies the dates, times of dates and

24  locations --

25          THE COURT:  You're misunderstanding what this hearing

1    is about.  I'm not going to throw Mr. Marco in jail.  This is

2    to revoke his license to serve process.  And I told him at the

3    last hearing that he would be wise to get a lawyer because what

4    he has alleged to have done is very serious in that he has

5    perhaps falsified documents, and then submitted them for filing

6    with the clerk's office, which would be a big problem for him.

7        I'm not going to ask him if he did.  I'm not going to

8    throw him in jail.  This is not a contempt proceeding, this is

9    merely a proceeding to tell me why I should not revoke his

10   license to serve process.  It's got nothing to do with his

11   liberties.

12           MR. MCCALL:  With all due respect to the Court,

13   number one, he was given Miranda warnings which would put him

14   on notice that there's criminal liability.

15           THE COURT:  That's right.

16           MR. MCCALL:  Number two, you refer to allegations,

17   and I see no allegations.

18           THE COURT:  Right, these people all here testified to

19   it, sir, you weren't here.

20           MR. MCCALL:  Right, but there was no written

21   allegations.

22           THE COURT:  I don't have to have written allegations,

23   that's where you're mistaken what this process is.

24           MR. MCCALL:  I may be fully mistaken.  I'm happy to

25   accept that I am mistaken.

1          THE COURT:  You are.

2          MR. MCCALL:  But, nevertheless, it's not clear to

3     him, and perhaps it would be -- I guess what we're talking

4     about is, he needs an opportunity to prepare, to see, and to

5     get the court reporter to type up what the testimony was.

6          I need to hire an investigator, so that if part of the

7     accusation is that he couldn't have done physically what he's

8     alleged to have done, in the time period that he's done, for

9     example, you know he was a courier for 21 years with my courier

10    company, not my personal courier company, but the one I used,

11    so I know that he can -- he knows all kinds of shortcuts and

12    whatever, and I want to see if, riding with an investigator, if

13    it can be done.

14         If that's one of the allegations, that's a factual thing

15    that needs physical time to go and research and to do his due

16    diligence.

17         THE COURT:  He's had his time.  Today we're going to

18    decide whether or not we're going to revoke his process.  I

19    asked him simply at the last hearing if he understood what the

20    charges are against him, if he wished to testify under oath

21    about what he did or did not do.  That's what that was about.

22    I'm not throwing him in jail, I'm not doing anything else to

23    him.

24         MR. MCCALL:  May I ask where are the charges

25    alleged?

 1                    THE COURT:  There are no charges alleged.

 2                    MR. MCCALL:  You just said charges.

 3                    THE COURT:  That's where you're mistaken.

 4                    MR. MCCALL:  Didn't the Court just say charges?

 5                    THE COURT:  I did not.

 6                    MR. MCCALL:  I thought you used the word charges.

 7                    THE COURT:  Allegations against him.  There are no

 8     charges against him, simply to revoke his license to serve

 9     process.

10                    MR. MCCALL:  Where are the allegations, your Honor?

11                    THE COURT:  I just handed them to you.  We had it in

12     the testimony the last time that Mr. Marco sat through and

13     heard it all.

14                    MR. MCCALL:  Okay, your Honor.  There is nothing by

15     way of a written allegation, is that correct?

16                    MS. GREENE:  Actually, there is a letter that I sent

17     to the Court.

18                    THE COURT:  Ms. Greene has sent letters in.

19                    MS. GREENE:  I'm the one spear heading this whole

20     thing.  I do have a letter that I sent to the Court, and I

21     believe I enclosed copies of the return citations in Dallas

22     County that I was aware of at that particular time.

23                    MR. MCCALL:  Your Honor, in terms of this person, my

24     client, Mr. Marco being served in an orderly process with the

25     written allegations against him, may the record reflect that he

1  has not so ever been served?

2       THE COURT:  He's been served with an order to show

3  cause.

4       MR. MCCALL:  Which is one page and has no factual

5  allegations.

6       MS. GREENE:  You can hold them.

7       MR. MCCALL:  If I may make a record, your Honor.  Can

8  I call my witness?

9       THE COURT:  You can make whatever you like.

10      MR. MCCALL:  Could I call my client to the stand for

11 the limited purpose of showing that he has never been served

12 with anything in writing.

13      THE COURT:  No, sir, I'm not going to do that.  I

14 will take judicial notice with the fact that he was served with

15 an order to show cause signed by me to see whether or not your

16 license should be revoked to serve process.

17      MR. MCCALL:  Thank you, your Honor.  Will you take

18 judicial notice that that show cause order is one page?  And I

19 would like to mark it, if the Court please.

20      THE COURT:  You don't need to mark it, I'm not going

21 to accept it as an exhibit.

22      MR. MCCALL:  Okay.  Would the Court take judicial

23 notice that there's not one factual allegation in the notice to

24 show cause?

25      THE COURT:  It's just an order to show cause why his

1    rights to serve process should be revoked.

2              MR. MCCALL:  Right.

3              THE COURT:  That's simply what it is.  It's not a

4    criminal allegation, it's not any jail time, it's not anything.

5    But with the allegations that came to light, I told Mr. Marco

6    he may want to get himself an attorney, because the allegations

7    are serious against him.

8              MR. MCCALL:  I understand, your Honor, but how is a

9    lawyer as an officer of the Court supposed to do his -- conduct

10   his due diligence if there's nothing in writing that the lawyer

11   can look at to determine what the factual allegations are?

12             THE COURT:  First off, I need to know whether you're

13   going to represent him or not?  Are you making an appearance on

14   his behalf today or not?

15             MR. MCCALL:  I'm making an appearance to ask for a

16   continuance.

17             THE COURT:  That's denied.  We're going to go forward

18   with the hearing again today like we did last time.

19             MR. MCCALL:  I would like to make an offer of proof

20   on my motion for continuance, that if I were allowed to call my

21   client, he would testify that he has approached me in the last

22   couple of weeks, that his wife is getting an insurance

23   settlement, that he is going to use some of those proceeds to

24   retain me, that he doesn't have the current ability to retain

25   me, for me to conduct due diligence to defend him on this.

1    But he has a liberty interest and a financial interest,

2    and a livelihood interest in this job.  That it is extremely

3    important to him.  As a matter of due process, we ask the Court

4    to give him a reasonable amount of time for his lawyer to see

5    something in writing as to what the factual allegations are by

6    way of getting the court reporter to type up the hearing that

7    occurred last time when no one was here when he had no counsel.

8         THE COURT:  No, there were people here.

9         MR. MCCALL:  When he had no counsel.

10    And that therefore that we can proceed in a way where he

11    can have effective assistance of counsel.  And I think that's a

12    reasonable request, and we would ask the Court to reconsider

13    our motion for continuance in light of that offer of proof.

14         THE COURT:  That's denied once again.

15         MR. MCCALL:  Arch McCall, your Honor.

16         THE COURT:  I said that's denied once again.

17         MR. MCCALL:  Your Honor, may I introduce into

18    evidence -- would you receive as an exhibit what I've been

19    handed by opposing counsel, which is a letter of October 31st,

20    on the letterhead of The Guerrero Law Office, addressed today,

21    to this Court, with no indication that there was a copy sent to

22    my client.

23    It's a one and a half page letter regarding this matter.

24    But, again, it doesn't -- it states that all of these citations

25    have been reissued.  So in terms of the underlying cases, as I

1    understand, all of these Defendants have been re-served.

2              MS. GREENE:  Correct.

3              MR. MCCALL:  So that in terms of anything that this

4    hearing has to do with pending cases, it doesn't affect -- this

5    hearing does not affect any of those pending cases, all of

6    those people have been re-served.

7              MS. GREENE:  Correct, I take care of my clients.

8              MR. MCCALL:  But it does affect his livelihood and

9    his ability to defend himself, and so therefore I would ask the

10   Court to take judicial notice -- does the Court have the

11   October 31st letter?

12             THE COURT:  I have it right here in my file.  I'll

13   take judicial notice of it.  No need to put it in the record.

14   I think Ms. Greene wants her copy back.

15             MS. GREENE:  Uh-huh.

16             THE COURT:  Anything further?

17             MR. MCCALL:  I've been handed three pieces of paper,

18   two of which say citation at the top.  One is in the case of --

19   addressed to Jessie MacFarland.  The other is addressed to

20   Felicia Murff.

21             MS. GREENE:  Those are my Tarrant County cases that I

22   discovered around the same time I discovered everything else.

23   And I've already written to the Court in Tarrant County for the

24   same thing to happen.

25             THE COURT:  Are those new ones, Ms. Greene, from the

1    last time?

2           MS. GREENE:  Yes, I did have -- I did receive final

3    confirmation on those after I was here last time,  bringing my

4    total up to eight.  Five in Dallas County, three in Tarrant

5    County.  And I didn't think we really needed to concern

6    ourselves with Tarrant County because we've got enough here in

7    Dallas.

8           THE COURT:  I don't have any authority for Tarrant

9    County.

10          MS. GREENE:  Right.  I already have taken steps to

11   get this process going in Tarrant County also.

12          THE COURT:  All right, very good.

13      Is there anybody here today that did not get a chance to

14   testify last time?

15          MS. GREENE:  Andrea Stoller, your Honor.

16          MS. STOLLER:  Andrea Stoller.  I'm an attorney in

17   Dallas -- in Texas.

18          MS. GREENE:  She has some information about things

19   that occurred after the last time we were here --

20          THE COURT:  Okay.

21          MS. GREENE:  -- that you may want to know about.

22          THE COURT:  Ma'am, let me get you to raise your right

23   hand.

24          (Whereupon the witness was sworn.)

25          MS. GREENE:  Do you want her -- to question her?

1          THE COURT:  You can just testify from there, that's
2     fine.
3                    ANDREA STOLLER,
4     having been sworn, testified as follows:
5          MS. STOLLER:  Do you want me just to tell you what
6     happened?  My name is Andrea Stoller.  My office is at 8117
7     Preston Road, Suite 300, Dallas, Texas, 75205.  I'm an attorney
8     licensed to practice in the State of Texas since 1992.  I was
9     contacted by Holly on the 26th of November.
10          MR. MCCALL:  Excuse me, your Honor, may we have a
11     last name?
12          MS. GREENE:  Greene.
13          THE COURT:  Have a seat, Ms. Greene.
14          MS. GREENE:  Thank you.
15          MS. STOLLER:  On the 25th of November I had citation
16     issued in a case that was going to be in the family courts of
17     Dallas County.  And John had done a lot of process serving for
18     me, so I called him and said, John, just like I always do,
19     John, the citation will be ready this afternoon, can you pick
20     it up?  This man is going to need to be served, he's going to
21     appear in federal court the 1st of December at 9:00.  But he's
22     from Thailand.  He's going to leave and go back to Thailand.
23     Can you do this?  Mr. Marco said, sure, I'll do it.
24          That's what he always does.
25          Subsequent to that, I got a call from Ms. Greene who had

1   been made aware that Mr. Marco had picked this up, and she

2   said, do you understand there is an order entered by Judge Cox

3   and he is not supposed to be serving anything?  And I said, no,

4   I had no idea.  She said, did he tell you anything?  Just that

5   he'd pick it up and serve it on Monday.  In fact, he was going

6   to meet him in the federal court because we had to find my

7   client to show us what her husband looked like.

8            THE COURT:  Right.

9            MS. GREENE:  So when I found that out I called her

10  back on Wednesday.  When I found it out I called Mr. Marco and

11  I asked him, I said, I need my citation back.  I did not tell

12  him why.  I indicated to him that I had changed my plans,

13  because I was afraid he wouldn't return it.

14       Thursday and Friday the courts were closed and I had to

15  have this guy served at 9:00 on Monday, so I had a few calls

16  back and forth with him, and finally on Friday, when I was out

17  of the office, he knew he could get up the elevators and just

18  put it on the front desk.  And it was there for me.

19       But I had no idea of this.  And I was really worried about

20  my client, because if he would have served it, I was afraid

21  that would be void service, if he was suspended, and we

22  couldn't get jurisdiction over this matter.

23            THE COURT:  Okay, thank you.

24            MR. MCCALL:  Your Honor, may I ask that the witness

25  take the witness chair, please?

CROSS OF ANDREA STOLLER BY MR. MCCALL

1          THE COURT:  You have some questions for her?

2          MR. MCCALL:  Yes, I do.

3          MS. GREENE:  As an attorney, are you appearing for

4  him now?

5          MR. MCCALL:  Yes, I am.

6          THE COURT:  Now he's appearing.

7      Go ahead, Mr. McCall.

8                    CROSS-EXAMINATION

9  BY MR. MCCALL:

10     Q.    Would you state your full name, please.

11     A.    Andrea K. Stoller.

12     Q.    How do you spell Stoller?

13     A.    S-t-o-l-l-e-r.

14     Q.    What's your date of birth, please?

15     A.    Your Honor, I think that's irrelevant.

16          THE COURT:  You don't need that.  He knows her

17  obviously.  Your client knows her, right?  So let's just move

18  on.

19          MR. MCCALL:  I don't know what my client knows, your

20  Honor.

21          THE COURT:  You're going to move on.  We're not going

22  to get into her personal information.

23     Q.    Did Holly Greene explain to you the -- what did Holly

24  Greene tell you with regard to John Marco?

25     A.    That there had been a hearing on -- I believe around

CROSS OF ANDREA STOLLER BY MR. MCCALL

1    November 21st, in which John —

2        Q.   That's 2003?

3        A.   Yes.

4        In which John Marco had to appear — appeared.  I don't

5    know if he had to, but he appeared.  And that as a result of

6    that hearing, his license to serve process was temporarily

7    suspended, that there was going to be a show cause hearing in

8    December, and did I know, did he tell me anything about his

9    license being suspended to serve process?

10       Q.   And your answer to her was no, that he had not told

11   you that?

12       A.   Right, not a word.

13       Q.   Have you ever experienced the situation where a

14   process server will have another process server serve

15   something?

16       A.   As far as John Marco goes, John Marco has always

17   served every one of mine.

18       Q.   Right.

19       A.   I'm am not aware — he has never told me that he has

20   used anyone else.  So, no, I've used John Marco for awhile

21   and —

22       Q.   Has all of your service been satisfactory through

23   John Marco up to the conversation that you had with —

24       A.   One, no.

25       Q.   But most of it has been?

CROSS OF ANDREA STOLLER BY MR. MCCALL

1     A.   Yes.

2     Q.   And my question was earlier, are you aware of the

3   circumstance where a process server will accept process and

4   give it to another process server, either because he can't or

5   for whatever reason serve it himself?

6     A.   No, I do not -- I don't go there.  If I pick the

7   process server, that's who I want to do my service.

8     Q.   I understand.  But my question --

9     A.   No.

10     Q.   Are you aware that that happens?

11     A.   No.

12     Q.   You've never even heard of that in your experience as

13   a lawyer?

14     A.   No.

15     Q.   How long have you been practicing?

16     A.   I already said since '92.

17     Q.   What field do you practice in?

18     A.   Basically mostly family law, some civil.

19     Q.   Do you have any board certifications?

20     A.   No.

21     Q.   Okay.  Now, you didn't give -- you talked to

22   Mr. Marco, is that correct?

23     A.   Correct.

24     Q.   And you didn't give him an opportunity to give you

25   any information whatsoever?

CROSS OF ANDREA STOLLER BY MR. MCCALL

1      A.   You know what --

2      Q.   Excuse me, did you hear my question?

3      A.   Sure I did.

4      Q.   Is that correct?

5      A.   Yes, I did.

6      Q.   You gave him an opportunity?

7      A.   I sure did.

8      Q.   What did you say to him?

9      A.   I told him I needed the citation back.

10     Q.   Right.

11     A.   He did not bother to explain to me that he was --

12 that his license was suspended.  He had the opportunity on the

13 phone to tell me anything he wanted.

14     Q.   Excuse me?

15     A.   Your question to me was, did I give him an

16 opportunity?

17     Q.   Excuse me, Ms. Stoller, the question that I have for

18 you right now is, you called up and you said to him, give me my

19 citation back, is that correct?

20     A.   That's correct.

21     Q.   Okay.  You did not ask him a question, is that

22 correct?

23     A.   That, I can't remember.

24     Q.   You can't remember whether you asked him a question?

25     A.   I know he had the opportunity to tell me anything he

1   wanted.

2       Q.   But you can't remember whether you asked him a

3   question?

4       A.   No.

5       Q.   And certainly if he had given the process to a

6   legitimate and licensed and properly licensed process server to

7   serve, and your client got duly served, then that would have

8   been a legitimate thing under the law, wouldn't it have been?

9       A.   Oh, I don't agree, no.

10      Q.   You say that that --

11      A.   I paid John Marco to serve, I don't pay somebody

12   else.  I don't think that would be a legitimate thing.

13      Q.   Excuse me, Ms. Stoller, I'm not asking whether you

14   think it would be a breach of contract, I'm asking whether

15   under the law you think that would be proper legal service?

16          THE COURT:  I'm not going to allow this witness to

17   answer that, what's proper legal service.  I don't need anybody

18   to tell me what proper legal service is.

19          MR. MCCALL:  Your Honor, for the record, if she were

20   able to answer she would say that would be proper legal

21   service.

22          THE WITNESS:  No, I don't think you can say what I

23   would say.

24          MS. GREENE:  Objection.

25          THE COURT:  Ms. Greene, you don't have the right to

1    make objections.

2         I don't need anybody to tell me what proper service is, or

3    what happens or does not.

4         Do you have anything else for this witness?  We need to

5    move along here.

6         Q.    How long did the conversation last?

7         A.    Maybe five minutes.

8         Q.    About five minutes.  And you called him?

9         A.    Yes.

10        Q.    And how long did your conversation last with attorney

11   Greene?

12        A.    Maybe ten minutes.  Maybe not even -- maybe five to

13   ten.  Enough for me to know I needed that citation back.

14        Q.    And what else did you discuss with Ms. Greene?

15        A.    That was basically it.

16        Q.    Just that, the temporary suspension?

17        A.    I did ask her how they, you know, I was impressed

18   that somebody that didn't know me would advise me of something

19   that could be a potential problem.  So I did ask how did she

20   know my name, how did she know he was going to serve that for

21   me.

22        Q.    What did she say?

23        A.    That when he walked in to pick up the citation there

24   was somebody there that I believe he had some kind of a

25   business relationship with, I don't remember the name, and they



1  were standing there in the lobby, and they had known of this

2  hearing, and he walked right by them, picked up the citation,

3  left, didn't recognize them, he didn't say hello or anything,

4  and so after that, that other person, I think, it's my

5  understanding, went to see what citation he signed out,

6  bothered to get it, and bothered to call me.

7      Q.   Do you use courier services?

8      A.   Rarely.

9      Q.   Did you know that his background was -- had been 21

10  years with one of the better courier services in Dallas?

11     A.   Your Honor, I think that's irrelevant.

12         THE COURT:  Do you have anything else?  We need to

13  move along here.

14         MR. MCCALL:  I would like to ask if she knows that.

15         THE COURT:  It doesn't matter to me.

16         THE WITNESS:  It's irrelevant.

17         MR. MCCALL:  I would say it would be an important

18  employment fact.  It would go to his credibility.

19         THE COURT:  Once again, I'm not going to allow her to

20  answer it.  Do you have anything else that you want to get into

21  with this witness?  You've pretty much exhausted it, as best I

22  can tell.

23         MR. MCCALL:  No further questions.

24         MS. STOLLER:  Do you have any?

25         MS. GREENE:  I'm not allowed to ask questions.

1        THE COURT:  She can't object, nor can she ask

2    questions.

3        THE COURT:  Anyone else here who didn't testify last

4    time who wishes to testify at all?

5        MR. MCCALL:  Your Honor, may we know from the Court

6    what dates are being alleged?

7        THE COURT:  You can get it from the transcript, if

8    you desire to have a copy of the transcript from the previous

9    hearing when Ms. Greene and several other people testified

10   specifically as to each act and each instance.  It's in the

11   record.

12       MR. MCCALL:  Thank you.

13   Your Honor, in order for that to do us any good, could we

14   have it and study it and come back to court and present our

15   defense at that time?

16       THE COURT:  I'm not sure I'm going to do that, but

17   you can certainly get it, and I'll hold off, but his order to

18   suspend process is still in place.

19       MR. MCCALL:  Yes, your Honor, we understand.

20       MS. GREENE:  So you're not making a final

21   determination right now?

22       THE COURT:  Not right now.  But he is still suspended

23   from serving process.

24   What do you need to know, Ms. Greene?

25       MS. GREENE:  I don't think it's right for him --

 1          THE COURT:  He can't serve process.

 2          MS. GREENE:  To be going downstairs, picking up

 3   stuff, like what happened here.  I don't think he should be

 4   allowed to pick up anything at all.

 5          THE COURT:  Ms. Greene, I have no control over that,

 6   you know that.

 7          MS. GREENE:  Okay.

 8          MR. MCCALL:  Your Honor, on that -- excuse me, your

 9   Honor.

10          MS. GREENE:  I need my other two pieces of paper back

11   from you.

12          MR. MCCALL:  On that point --

13          MS. GREENE:  The two citations that I gave you for

14   Tarrant County that you have in your possession.

15          MR. MCCALL:  Would you look in your stack there,

16   Ms. Greene?

17          THE COURT:  I thought he gave them back to you,

18   Holly.

19          MS. GREENE:  They're here, I'm sorry.

20          MR. MCCALL:  Your Honor, on that point, if I may

21   respectfully ask the Court, on this point is there anything

22   that prohibits him from picking up process and going to a

23   perfectly licensed process server and asking them to serve it?

24          THE COURT:  Let's just say this.  I don't think it

25   looks good for Mr. Marco to do that.  I'm not going to prevent

1   him from doing that, but every time he does it, it raises

2   suspicion in my mind that he is continuing to violate my order

3   that does not allow him to serve process.

4           MR. MCCALL:  Well, okay, your Honor, what if he takes

5   a copy of your order and gives it to —

6           THE COURT:  Mr. McCall, I've said all I'm going to

7   say.  I'm not going to give you advisory opinions, or rulings,

8   whatsoever.  That's it.  I just told you all I'm going to tell

9   you about it.  He can make his own decisions.  Every time he

10  serves it leaves me — every time he picks up service, it leads

11  me to believe that he is out there violating my order.  So be

12  that as it may, that's all I'm going to say.  The hearing is

13  over, y'all need to go.

14          MR. MCCALL:  I'm going to alert the Court that I'm

15  going to advise him that if he does that, he'll notify a lawyer

16  with a copy of your order, so there will be full disclosure

17  that he's acting basically as a courier to pick up process,

18  give it to another, so the job gets done.  But he's not making

19  anything — any representations other than —

20          THE COURT:  That's fine.

21          MR. MCCALL:  Thank you.

22                          END OF PROCEEDINGS

23

24

25

1   THE STATE OF TEXAS

2   COUNTY OF DALLAS

3

4       I, SHARRON RODRIGUEZ RANKIN, Official Court Reporter in and

5   for the 160th Judicial District Court of Dallas County, State

6   of Texas, do hereby certify that the above and foregoing

7   contains a true and correct transcription of all portions of

8   evidence and other proceedings directed in writing by counsel

9   for the parties to be included in this Volume of the Reporter's

10  Record in the above styled and numbered cause, all of which

11  occurred in open court or in chambers and were reported by me.

12      I further certify that this transcription of the

13  proceedings truly and correctly reflects the exhibits, if any,

14  offered by the respective parties.

15      I further certify that the total cost for the preparation

16  of this Reporter's Record is $125 and was paid.

17      WITNESS my hand this the 24th day of February, 2004.

18

19

                              SHARRON RODRIGUEZ RANKIN
20                            Official Court Reporter
                              Certificate Number 1082
21                            Expiration Date:  12-31-04
                              160th District Court
22                            4th Floor Allen Courts Bldg.
                              (214) 653-6938
23

24

25

SHARRON R. RANKIN, CSR, 160TH DISTRICT COURT
Dallas, Texas (214) 653-6938